**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **SHANTAE WINSTON, Individually and on behalf of CARLTON BERNARD deceased,** | |
| **Plaintiff,** | |
| **v.** | |
| **CITY OF ST. LOUIS, MISSOURI,** | |
| **Serve: OFFICE OF THE MAYOR OF ST. LOUIS**<br>**1200 Market St.**<br>**St. Louis, MO 63103** | |
| **YESCARE CORP.,** | **JURY TRIAL DEMANDED** |
| **Serve: CHS MO, LLC**<br>**120 S Central Ave**<br>**CLAYTON, MO 63105** | |
| **CHARLES WILKE** | |
| **Serve: St. Louis City Justice Center**<br>**200 S Tucker Blvd**<br>**St. Louis, MO 63102** | |
| **TRAVIS SCHNEIDER** | |
| **Serve: St. Louis City Justice Center**<br>**200 S Tucker Blvd**<br>**St. Louis, MO 63102** | |
| **JENNIFER CLEMONS-ABDULLAH** | |
| **Serve: St. Louis City Justice Center**<br>**200 S Tucker Blvd**<br>**St. Louis, MO 63102** | |
| **JENNIFER BURNS,** | |
| **Serve: St. Louis City Justice Center** | |

1

**200 S Tucker Blvd**
**St. Louis, MO 63102**


**LYNETTE JONES,**

**Serve: St. Louis City Justice Center**
**200 S Tucker Blvd**
**St. Louis, MO 63102**


**JOSEPH MIRLINE,**

**Serve:  St. Louis City Justice Center**
**200 S Tucker Blvd**
**St. Louis, MO 63102**


**VALARIE MCGEE,**

**Serve: St. Louis City Justice Center**
**200 S Tucker Blvd**
**St. Louis, MO 63102**

**KHADIJAH GHANI,**

**Serve: St. Louis City Justice Center**
**200 S Tucker Blvd**
**St. Louis, MO 63102**

**ANGELA BURRIS,**

**Serve: St. Louis City Justice Center**
**200 S Tucker Blvd**
**St. Louis, MO 63102**


**JOHN AND JANE DOES 1-5**


**Defendants.**

## COMPLAINT

COMES NOW, Plaintiff, Shantae Winston, Individually and on behalf of Carlton Bernard, deceased, and for her Complaint against Defendants states as follows:

## STATEMENT OF CASE

1.      On June 20, 2023, Carlton Bernard ("Mr. Bernard"), 32, was arrested in the city of St. Louis, Missouri and booked into the St. Louis City Justice Center ("the jail"). On August 17, 2023, Mr. Bernard was found appearing "sick" and "very frail", having vomited while laying down in his bed. Bernard was found to have two consecutive blood sugar readings over 400mg/dL, and one as high as 456mg/dL, constituting a medical emergency.[1] Bernard was diagnosed with *diabetes mellitus,* for which he received 5 units of insulin on the same day. Over the following three days, Mr. Bernard would be ignored by guards and medical providers, would receive no insulin and would die of dehydration and diabetic ketoacidosis on August 20, 2023. Over the course of three days between August 17, 2023. and August 20, 2023, a "code three" –an alert used to summon staff for emergency medical assistance-was called on two separate occasions. Moreover, while Mr. Bernard was *diagnosed* with diabetes, demonstrating a serious medical need, but in spite of that, the jail and/or YesCare only administered insulin—a medication vital to his survival—one time in the three days prior to his death. The cause of Mr. Bernard's death was *diabetic ketoacidosis and dehydration*, which were directly caused by the lack of medical treatment and the failure to administer insulin. The dehydration was also a result of being ignored by St. Louis City guards, who did nothing while Bernard's food and drink trays stacked up in his cell, untouched. Most of

---

[1] Blood sugar readings above 300mg/dL constitute a serious medical emergency that demands a 911 call for Emergency Medical Services. When combined with the presence of symptoms of diabetic ketoacidosis, including the visible presence of vomit in Mr. Bernard's cell and on his person, the medical emergency becomes even more urgent and dire.
https://www.cdc.gov/diabetes/about/diabetic-ketoacidosis.html

these events occurred after Mr. Bernard's diagnosis of diabetes, when the medical personnel and jail guards were on notice of his serious medical need. Mr. Bernard had also been diagnosed with schizophrenia, a serious medical need, requiring medication, prior to being detained, and the St. Louis City jail and YesCare were aware of his diagnosis, ignored it and provided no medication or other care. The severity of Bernard's schizophrenia and physical health condition was also known to medical personnel and obvious to non-medical laypersons, including jail guards and other detainees. Indeed, on the last day of his life -August 20, 2023, when Mr. Bernard was supposed to have his blood sugar monitored and provided insulin, a YesCare practical nurse and a jail guard saw Mr. Bernard laying naked on the floor of his cell, immobilized, with multiple food and drink trays stacked and untouched. Mr. Bernard was verbally unresponsive to the nurse and guard. Despite Mr. Bernard's desperate condition--severely dehydrated and in a state of ketoacidosis--neither the nurse nor the guard entered his cell or rendered any aide. Instead, when provided the opportunity to save Mr. Bernard's life, these two jail personnel, one of whom was a diabetic nurse with insulin in their possession, simply walked away and left the unit. Mr. Bernard was left in his cell for four more hours, suffering from severe dehydration and diabetes-induced ketoacidosis. Mr. Bernard ultimately died because of defendants deliberate indifference to his serious medical need.

2.    In the two months spent in jail as a pre-trial detainee, Mr. Bernard lost thirty-three (33) pounds, twenty-four (24) percent of his total body weight. These events in August 2023 occurred after St. Louis City and their contracted medical provider ("YesCare") were long on notice of a pattern and practice of not only failing to treat detainees with serious medical needs and failing to follow routine jail policies related to, among other things, the need to monitor and/or routinely check on detainees, but St. Louis City and YesCare were also on notice of the

inadequacies and repeated failures of their training, supervision and discipline. This pattern and practice of misconduct, as well as the failure to train, supervise, and discipline, were the moving forces behind Mr. Bernard's death, like so many other detainees that had died before him. As a result, St. Louis City and YesCare, in additional to the individually named defendants, are liable for the losses suffered by Mr. Bernard and his mother, the Plaintiff. Mr. Bernard suffered immense and prolonged psychological and physical pain, distress, and ultimately a diabetic coma, suffering being conscious but immobile in his own body as dehydration and ketoacidosis took his life. Ms. Winston has suffered the immeasurable loss of her beloved 32-year-old son and she continues to suffer greatly knowing that the City of St. Louis could have but failed to treat her son, leaving him naked, immobile and unresponsive on the floor of his cell for hours causing her son immense suffering and, ultimately, his untimely death.

3.      Accordingly, Plaintiff, individually and on behalf of her son Carlton Bernard, seeks judgment against the above-named Defendants, in their individual capacities, for violations of Mr. Bernard's Constitutional rights to receive adequate medical care under the Eighth and Fourteenth Amendment (Count I); for failure to train, supervise, and/or discipline (Count II) cognizable pursuant to 42 U.S.C. § 1983 and § 1988; unconstitutional policy, pattern and practice (Count III), and Plaintiff also brings claims under Missouri State law, including claims for wrongful death (Count IV), medical negligence (Count V) and negligence (Count VI).

4.      Jurisdiction is proper to this Court, pursuant to 28 U.S.C. §§ 1331 and 1343, which provides this Court with original jurisdiction over cases and controversies raising federal questions and claims. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

5.      Venue is proper to this Court as the incidents and events giving rise to Plaintiff's claims arose and occurred within the City of St. Louis, Missouri and thereby within the geographical boundaries of the Eastern District of Missouri.

<u>**PARTIES**</u>

6.      Plaintiff Shantae Winston (hereinafter "Plaintiff Winston") is and was at all times relevant herein a citizen of the United States of America and was a resident of the State of Missouri. Further, Plaintiff Winston is the mother of Carlton Bernard and therefore the appropriate party to bring action on his behalf.

7.      Defendant City of St. Louis, Missouri (hereinafter "St. Louis") is a body politic, municipal corporation and/or political subdivision of the State of Missouri, organized and existing pursuant to the Missouri Constitution and State Law. Defendant City of St. Louis (hereafter "St. Louis") operates with authority over the St. Louis City Justice Center.

8.      Defendant YesCare, Corp. (hereinafter "YesCare") was, and is, a corporation authorized to do business within St. Louis City, Missouri. YesCare was duly organized, created, and exists under and by virtue of the laws of the State of Tennessee. YesCare regularly conducts business in St. Louis, Missouri in conjunction with Defendant St. Louis.

9.      Upon information and belief, and at all relevant times contemplated herein, YesCare reached a meeting of minds and/or mutual understanding, orally and/or in writing, with St. Louis to recruit, contract, employ, train, compensate, and supervise medical professionals to provide services including, but not limited to, examinations, treatments, and care for all of the inmates housed at St. Louis City Justice Center at least between November 2022 and all times relevant to this lawsuit. Accordingly, YesCare was a willing participant with St. Louis and/or its agents in the joint action that violated Mr. Bernard's Eighth and Fourteenth Amendment rights

6

under the Constitution of the United States and thus qualifies as a state actor acting under the color of state law for the purposes of this lawsuit under 42 U.S.C. § 1983.

10.    Defendant Charles Wilke (hereinafter "Defendant Wilke") is and was at all time relevant hereto a citizen of the United States and a nurse practitioner employed by YesCare and/or St. Louis City who worked within the jail. At all times relevant hereto, Defendant Wilke was acting under color of state law and authority of his position with Defendants YesCare and/or St. Louis. For purposes of Plaintiff's federal claims, Defendant Wilke is named in her individual capacity.

11.    Defendant Travis Schneider (hereinafter "Defendant Schneider") is and was at all time relevant hereto a citizen of the United States and a jail guard employed by St. Louis City who worked within the jail. At all times relevant hereto, Defendant Schneider was acting under color of state law and authority of his position with Defendant St. Louis. For purposes of Plaintiff's federal claims, Defendant Schneider is named in his individual capacity.

12.    Defendant Jennifer Burns (hereinafter "Defendant Burns") is and was at all time relevant hereto a citizen of the United States and a nurse practitioner employed by YesCare who worked within the jail. At all times relevant hereto, Defendant Burns was acting under color of state law and authority of her position with Defendants YesCare and St. Louis. For purposes of Plaintiff's federal claims, Defendant Burns is named in her individual capacity.

13.    Defendant Lynette Jones (hereinafter "Defendant Jones") is and was at all time relevant hereto a citizen of the United States and a professional counselor employed by YesCare who worked within the jail. At all times relevant hereto, Defendant Jones was acting under color of state law and authority of her position as a counselor with Defendants YesCare and St. Louis. For purposes of Plaintiff's federal claims, Defendant Jones is named in her individual capacity.

14.     Defendant Joseph Mirline (hereinafter "Defendant Mirline") is and was at all time relevant hereto a citizen of the United States and a licensed practical nurse employed by YesCare who worked within the jail. At all times relevant hereto, Defendant Mirline was acting under color of state law and authority of his position as a licensed practical nurse with Defendants YesCare and St. Louis. For purposes of Plaintiff's federal claims, Defendant Mirline is named in his individual capacity.

15.     Defendant Valarie McGee (hereinafter "Defendant McGee") is and was at all time relevant hereto a citizen of the United States and a licensed practical nurse employed by YesCare who worked within the jail. At all times relevant hereto, Defendant McGee was acting under color of state law and authority of her position as a licensed practical nurse with Defendants YesCare and St. Louis. For purposes of Plaintiff's federal claims, Defendant McGee is named in her individual capacity.

16.     Defendant Khadijah Ghani (hereinafter "Defendant Ghani") is and was at all time relevant hereto a citizen of the United States and a licensed practical nurse employed by YesCare who worked within the jail. At all times relevant hereto, Defendant Ghani was acting under color of state law and authority of her position as a nurse with Defendants YesCare and St. Louis. For purposes of Plaintiff's federal claims, Defendant Ghani is named in her individual capacity.

17.     Defendant Angela Burris (hereinafter "Defendant Burris") is and was at all time relevant hereto a citizen of the United States and a licensed practical nurse employed by YesCare who worked within the jail. At all times relevant hereto, Defendant Burris was acting under color of state law and authority of her position as a nurse with Defendants YesCare and St. Louis. For purposes of Plaintiff's federal claims, Defendant Burris is named in her individual capacity.

18.    Defendants John and Jane Does 1-4 were at all time relevant hereto a citizen of the United States and a licensed medical provider who worked within the jail. At all times relevant hereto, Defendants John and Jane Does were acting under color of state law and authority of her position as a supervisor of diabetic nurses and was responsible for conducting assessments, giving insulin, and/or escalating a serious medical need such as a known diabetic inmate needing insulin. Defendants John and Jane Does 1-4 are named in their individual capacity.

19.    Defendant John or Jane Doe 5 is and was at all time relevant hereto a citizen of the United States and a physician who entered into a supervisory collaborative practice agreement with nurse practitioner(s) and/or licensed practical nurse(s) employed by YesCare and/or the City of St. Louis, who worked within the jail.

## ALLEGATIONS COMMON TO ALL COUNTS

20.    Carlton Bernard ("Mr. Bernard") was arrested within the jurisdiction of the city of St. Louis on June 20, 2023.

21.    At the time of his arrest, Mr. Bernard was thirty-two years old.

22.    At the time of his arrest, Mr. Bernard weighed approximately 140 lbs.

23.    Upon arrest. Mr. Bernard was taken to the St. Louis City Justice Center ("the jail").

24.    Upon information and belief, Defendants Wilke, Burns, Jones, Mirline, McGee, Ghani, and Burris were all employee of YesCare and had no employment relationship with St. Louis City[2].

---

[2] When Plaintiff's allegations are made under information and belief throughout this complaint, Plaintiff does so where Plaintiff has information to suggest and believes that evidence supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material (i.e. police reports, witness statements, jail medical records, etc.) that makes the inference of culpability plausible. Here, Plaintiff has previously served state open

25.     Travis Schneider was and is employed by St. Louis City.

26.     Mr. Bernard had previously been detained within the St. Louis City Justice Center in 2017.

27.     Upon information and belief, during his 2017 detention at the jail, medical records were created, generated, retained, and/or maintained which documented Mr. Bernard's diagnosis of schizophrenia.

28.     In July of 2023, Mr. Bernard's mental and physical health began to deteriorate.

29.     In the early hours of July 14, 2023, Mr. Bernard was observed screaming in his cell. Mr. Bernard screamed in fear of invisible insects within his cell, and in fear of the correctional officers at the jail.

30.     On July 24, 2023, a correctional officer requested that the jail's medical staff evaluate Mr. Bernard's mental health.

31.     On August 8, 2023, a correctional officer noticed that Mr. Bernard was unkempt, in need of a shower, and "doesn't talk very well."

32.     On August 15, 2023, Defendant Jones, a licensed counselor at the jail, visited Mr. Bernard to talk about his mental health. During this visit Defendant Jones noted that Mr. Bernard did not self-report any mental health issues.

33.     Defendant Jones was aware or should have been aware of Mr. Bernard's 2017 schizophrenia diagnosis and his serious medical need for treatment and/or medication.

---

records requests on St. Louis City Jail for which, still, records have been produced. Plaintiff believes these records and internal investigations will further support Plaintiff's contentions made under information and belief.

34.     Defendant Jones was aware of the correctional officers' request(s) for the psychological evaluation of Mr. Bernard and specifically the concerning behaviors that prompted such request(s).

35.     Following her encounter with Mr. Bernard, Defendant Jones did not treat Bernard's serious medical needs or contact any other medical providers regarding Mr. Bernard's health.

36.     Days later, on August 17, 2023, a correctional officer found Mr. Bernard in his cell lying down with vomit on himself and appeared "very sick and frail." This officer called an emergent medical code ("code three").

37.     Mr. Bernard was assessed and found to have very high blood sugar, with one reading of 456 and one reading of 454mg/dL.

38.     A blood sugar reading above 400 is considered an extremely dangerous medical emergency that requires immediate emergency medical attention to prevent death.

39.     Upon information and belief, Decedent Bernard was in a state of diabetic ketoacidosis and/or a hyperosmolar hyperglycemic state.

40.     Bernard was visibly suffering from dehydration, as obvious to untrained laypersons, due to his medical conditions, vomiting, and visibly obvious lack of consumption of food or water.

41.     Mr. Bernard was taken to the jail's infirmary at approximately 12:00 p.m. on August 17, 2023.

42.     While Mr. Bernard was in the infirmary, Defendant Burns, a nurse practitioner, ***diagnosed Mr. Bernard as suffering from diabetes mellitus 2*** and prescribed insulin to be administered to Bernard twice daily.

43.     Defendant Burns noted that Mr. Bernard's condition could worsen, and he could die if his diabetes went untreated.

44.     During her encounter with Mr. Bernard, Defendant Burns observed that Mr. Bernard was distrustful of the jail's medical staff and had vomited in his cell.

45.     During this encounter, Mr. Bernard told Defendant Burns that he had also been *diagnosed* previously with schizophrenia.

46.     During this encounter, Defendant Burns also knew of Mr. Bernard's prior *diagnosis* of schizophrenia.

47.     Defendant Burns did not prescribe medication, contact a mental health professional, or otherwise treat Mr. Bernard's schizophrenia.

48.     Defendant Burns did not administer fluids or medication, contact another healthcare professional, or otherwise treat Mr. Bernard's dehydration.

49.     Defendant Burns did not schedule a follow up with himself or any other medical provider to address Mr. Bernard's two diagnoses of *schizophrenia or diabetes*.

50.     At the very next medical pass for Bernard, during the evening medication pass on August 17, 2023, Defendant Burris, a licensed practical nurse at the jail, noted Mr. Bernard as having "refused" his diabetic medication.

51.     Defendant Burris did not administer Mr. Bernard's insulin.

52.     Upon information and belief, shortly after August 17th, Mr. Bernard became completely incapacitated due to his dehydration and diabetes and was unable to stand or respond to guards and medical providers in the visits leading up to the 4:00 a.m. "code three" on August 20th.

53.     Mr. Bernard did not refuse and/or could not refuse his medication without further action being taken, and/or without necessitating further follow-up action or a referral being sought or obtained by jail or medical staff, as the medication in question was necessary to sustain his life and he had previously been diagnosed with schizophrenia.

54.     The "referral for additional follow up" was left blank by Defendant Burns.

55.     According to jail staff medical records, Mr. Bernard's symptoms of mental illness were documented as early as July 14, 2023.

56.     During the morning medication pass on August 18, 2023, Defendant Khadijah, a licensed practical nurse at the jail, recorded Mr. Bernard as having refused medications, however no one witnessed this purported refusal, in contradiction of jail policy.

57.     Defendant Khadijah did not administer Mr. Bernard's prescribed insulin.

58.     Upon information and belief, shortly after being diagnosed with diabetes and prescribed insulin on August 17th, Mr. Bernard became completely incapacitated due to his diabetes and/or dehydration.

59.     Upon information and belief, Mr. Bernard was unable to stand or respond to guards and medical providers for all the guard and medical visits leading up to the 4:00 a.m. "code three" on August 20th.

60.     Mr. Bernard did not refuse and/or could not refuse his medication without further action being taken, and/or without necessitating further follow-up action or a referral being sought or obtained by jail or medical staff, as the medication in question was necessary to sustain his life and he had previously been diagnosed with schizophrenia.

61.     During the evening medication pass on August 18, 2023, Defendant McGee, a licensed practical nurse at the jail, claimed that Mr. Bernard had refused medications, but no refusal form was recorded or signed pursuant to jail policy.

62.     Defendant McGee did not administer Mr. Bernard's prescribed insulin.

63.     Upon information and belief, shortly after August 17th, Mr. Bernard became completely incapacitated due to his dehydration and diabetes, and was unable to stand or respond to guards and medical providers for all the guard and medical visits leading up to the 4:00 a.m. "code three" on August 20th.

64.     Mr. Bernard did not refuse and/or could not refuse his medication without further action being taken, and/or without necessitating further follow-up action or a referral being sought or obtained by jail or medical staff, as the medication in question was necessary to sustain his life and he had previously been diagnosed with schizophrenia.

65.     During the morning medication pass on August 19, 2023, Defendant Mirline, a licensed practical nurse at the jail, reported that Mr. Bernard had refused treatment, but no refusal form was entered into Bernard's medical record.

66.     Defendant Mirline did not administer Mr. Bernard's prescribed insulin.

67.     Defendant Mirline did not administer fluids or medication, contact another healthcare professional, or otherwise treat Mr. Bernard's dehydration.

68.     Upon information and belief, shortly after August 17th, Mr. Bernard became completely incapacitated due to his dehydration and diabetes, and was unable to stand or respond to guards and medical providers for all the guard and medical visits leading up to the 4:00 a.m. "code three" on August 20th.

69.     Mr. Bernard did not refuse and/or could not refuse his medication without further action being taken, and/or without necessitating further follow-up action or a referral being sought or obtained by jail or medical staff, as the medication in question was necessary to sustain his life and he had previously been diagnosed with schizophrenia.

70.     Diabetes is a serious medical condition which can result in death if not treated.

71.     Schizophrenia is a serious medical condition that, without treatment, can result in psychosis and a patient being unable to competently make informed medical decisions about their health, as well as an increased risk of premature death.

72.     Mr. Bernard was not able to make informed medical decisions regarding his diabetic medical care due to his diagnosed, persistent, and untreated schizophrenia.

73.     Bernard was not provided insulin *even once* following his departure from the infirmary on August 17, 2023, and his death August 20, 2023.

74.     Then, on August 20, 2023, at 4:00 a.m., Defendant diabetic nurse Wilke entered Bernard's housing unit.

75.     Defendant Travis Schneider was the St. Louis City jail's guard on duty in Bernard's housing unit at that time.

76.     Defendant diabetic nurse Wilke provided insulin to the other two detainees that morning but not Mr. Bernard.

77.     Jail video shows Defendant diabetic nurse Wilke looking into Mr. Bernard's cell and seeing Mr. Bernard lying on the floor.

78.     Defendant diabetic nurse Wilke would later tell police that Mr. Bernard was lying on the floor and was not verbally responsive.

79.     Defendant diabetic nurse Wilke did not ask Defendant guard Schnieder to open the cell door or otherwise attempt to go inside and check on Mr. Bernard.

80.     Instead, Defendant diabetic nurse Wilke continued to do his rounds, came back and yelled Mr. Bernard's name again through the cell door and ultimately left Bernard's housing unit at 4:39 a.m. exhibiting deliberate indifference to Mr. Bernard's serious medical need.

81.     Defendant Schneider knew Defendant diabetic nurse Wilke didn't take Bernard's blood sugar, provide insulin, assess vital signs, or even enter Bernard's cell to determine why Mr. Bernard was lying on the ground naked and unable to respond to Defendant Wilke's verbal commands.

82.     Therefore, it was *not reasonable* for Defendant Schneider, a guard, to rely on the diabetic licensed practical nurse, Defendant Wilke, due to their total inaction and refusal to assess or treat Mr. Bernard.

83.     Upon information and belief, Defendant Schneider was not adequately trained, supervised, or disciplined in regard to identifying, recognizing, and responding to medical issues or emergencies within the jail.

84.     Mr. Bernard had *at least* two serious medical needs known to Defendants Wilke and Schneider on August 20, 2023.

85.     Defendants Wilke and Schneider both knew Mr. Bernard was diagnosed with diabetes and both defendants knew that Mr. Bernard was lying on the floor of his cell naked, emaciated, was unable to respond to their verbal inquires, and had untouched food trays stacked up in his cell, therefore, outside of his Mr. Bernard's diagnosis, it was also obvious to anyone, including a nurse and/or a layperson, that Bernard, lying on the ground in that state, had a serious medical need.

16

86.     After Defendant nurse Wilke abandoned Mr. Bernard, hours would go by and during the guard transition meeting during shift change known as "pass-down", at around 6:55 a.m., Defendant guard Schneider informed jail guard Armstrong about Mr. Bernard's serious medical condition.

87.     Then, at 7:07 a.m. while detainees were cleaning the floor, the detainees looked inside Mr. Bernard's cell and exclaimed Bernard "needs an ambulance!"

88.     At 7:07 a.m. another detainee states that Bernard is trying to catch his breath.

89.     Therefore, Mr. Bernard's serious medical need was clearly obvious to laypersons with no medical training.

90.     Upon information and belief, jail guard Armstrong was not adequately trained, supervised, or disciplined in regard to identifying, recognizing, and responding to medical issues or emergencies within the jail,

91.     At 7:29 a.m. jail guard Armstrong called medical staff in the jail regarding Mr. Bernard.

92.     The nurses would arrive at Bernard's cell at 7:31 a.m. but despite that, wouldn't be called for another ten minutes, at 7:41 a.m., which constituted a serious and significant delay.

93.     Mr. Bernard was ultimately pronounced deceased on August 20, 2023 at 8:40 a.m. immediately upon his arrival at the hospital.

94.     The cause of death was **ketoacidosis due to diabetes mellitus and dehydration**.

95.      At the time of his autopsy, Mr. Bernard only weighed 107 lbs.

96.     Mr. Bernard weighed 140 lbs. at intake and lost 33 pounds in the two months prior to his death.

97.     Rapid weight loss demonstrates a serious medical need.

98.    Severe acute malnutrition is a serious medical need.

99.    Mr. Bernard's death was preventable.

100.    John Does 1-4 are supervisory medical officials and/or supervisory nurses that had the duty to train, supervise and discipline the individually named defendants.

101.    John Does 1-4 were not only aware of a pattern of unconstitutional acts committed by the individually named defendants in the past, acts similar to and/or the same as the unconstitutional acts alleged herein, but John Does 1-4 also aware of their own and the City of St. Louis and YesCare's previous failures to train, supervise and discipline.

102.    Under info and belief, John Does 1-4 had a duty, inter alia, to review and/or audit the conduct, medications, medical records, and/or medical orders of jail medical staff. This includes, but is not limited to, confirming whether or not nurses are administering prescribed medications in accordance with medical orders.

103.    John Doe 5 was not only aware of a pattern of unconstitutional acts committed by the individually named defendants in the past, acts similar to and/or substantially the same as the unconstitutional acts alleged herein, but John Doe 5 was also aware of their own and the City of St. Louis and YesCare's previous failures to train, supervise and discipline.

104.    Defendant correctional officers and medical staff were aware that Mr. Bernard was suffering from multiple serious medical conditions and was in need of immediate professional medical intervention and support, however, despite that knowledge all defendants were deliberately indifferent to Mr. Bernard's medical needs.

105.    Even though corrections and medical staff knew and/or should have known of Mr. Bernard's serious need for timely medical intervention and his prescription medication and treatment for his illnesses and medical conditions, they failed to provide him with adequate and

timely medical care, including, but not limited to, administering his prescribed medication as ordered by Defendant Burns, conducting medical assessments, sending Mr. Bernard to the infirmary and/or an emergency room or hospital, and/or contacting emergency services in the days and hours leading up to his death.

106.    Based on Mr. Bernard's condition, the jail's records of his schizophrenia diagnosis, Mr. Bernard's erratic behavior, and the Defendants' awareness and direct observation of his illness, Defendants had actual knowledge of Mr. Bernard's serious medical need, including his need for a physician-ordered prescribed medication and/or standing orders to receive assessments and medication, and knew that Mr. Bernard was not receiving his life-sustaining prescription medication and that the medical treatment he was receiving was inadequate.

107.    Defendants intentionally, willfully, maliciously, and while acting under the color of state law, showed a deliberate indifference to Mr. Bernard's medical needs, in that they had actual knowledge of his sudden change in behavior, orientation, and mental state, and his need for prescription medications, and his serious medical need was also obvious to laypersons, yet Defendants still did not provide adequate and appropriate medical treatment.

108.    In the alternative, Defendants, while acting under the color of state law, treated Mr. Bernard in a manner that is objectively unreasonable given their well-documented prior knowledge about his medical conditions.

**_Monell Claims_**

109.    Defendant St. Louis City and YesCare employed unconstitutional procedures customs, and practices that resulted in insufficiently provided medical treatment and emergency life-saving care to Mr. Bernard and violated his civil rights, in that, among other things, these Defendants had a custom and pervasive practice of 1) not providing adequate medical care to

detainees, 2) not providing or prescribing medically necessary and/or prescribed medications to detainees, 3) mis-administering, maladministering, and/or failing to administer medically necessary and/or prescribed medications, and 4) knowing their employees were falsifying patient "refusals" of medication and routinely violating jail and YesCare policies to cover-up work their employees simply refused to do.

110.     In addition, Defendants St. Louis City, YesCare, Ms. Clemons-Abdullah, and John Does 1-5 were all on notice of the patten and practice of denying and/or delaying medical care, and were also on notice of their failures to train, supervise and discipline their agents and employees. Indeed, under information and belief, all of the above defendants were also specifically on notice of the individual defendant's pattern and practice of delaying and delaying adequate medical care, including related to Defendants Schneider and Wilke.

111.     Defendants St. Louis and YesCare also enacted inadequate policies and did not train, supervise and discipline its employees to ensure either existing policies were followed or ensure that Mr. Bernard's needs were properly assessed, diagnosed, and addressed or treated.

112.     Upon information and belief, Defendants St. Louis and/or YesCare denied and/or delayed adequate medical care denying the constitutional rights of at least fifteen inmates that died in custody at the St. Louis City Justice Center, in merely three years, from 2020 through 2023. At least four detainees, including Mr. Bernard, died from delayed and denied care between August and December of 2023.[3] St. Louis City and YesCare had notice, for years, of their pattern and practice not only of delaying and denying adequate medical care but also their lack of training,

---

[3] https://www.stltoday.com/news/local/government-politics/jail-warden-isn-t-to-blame-for-recent-deaths-st-louis-public-safety-chief-says/article_a25190aa-9a0f-11ee-ac40-d3c55b484f57.html

supervision and discipline, and both the pattern and practice as well as the failure to train, supervise and discipline were the moving force behind Mr. Bernard's death and Plaintiff's injuries.

113.    At least fifteen (15) people died in city jail custody between 2020 and December 15, 2023.[4]

114.    At least seventeen (17) people died in city jail custody between 2009 and 2019. [5]

115.    Additional in-custody deaths have occurred since the hearing on December 15, 2023, with the most recent known death reported on August 24, 2023.[6]

116.    These deaths were reported publicly and/or by media and demonstrate that the city jail and staff were on notice that not only the quantity of jail deaths was increasing, but also the rate of acceleration of in-custody deaths was increasing.[7]

117.    Defendants acted individually to deprive Mr. Bernard of appropriate medical care, to which he is entitled under the Eighth and Fourteenth Amendments to the U.S. Constitution as well as under 42 U.S.C. § 1983.

118.    As a direct and proximate cause of Defendants' negligence and deliberate indifference, Plaintiff Winston suffered the loss of her beloved son.

119.    As a direct and proximate result of the Defendants' negligence and deliberate indifference and pursuant to § 537.090 RSMo, Plaintiff herself was deprived of decedent's valuable services, companionship, comfort, guidance, support, familial love, and affection.

---

[4] https://www.stltoday.com/news/local/government-politics/jail-warden-isn-t-to-blame-for-recent-deaths-st-louis-public-safety-chief-says/article_a25190aa-9a0f-11ee-ac40-d3c55b484f57.html
[5] https://www.archcitydefenders.org/wp-content/uploads/2021/01/ACD-FSV-report.pdf
[6] https://www.stltoday.com/news/local/crime-courts/inmate-attempts-suicide-in-st-louis-city-jail-cell-dies-in-hospital-police-say/article_bccfa91e-6717-11ef-991f-4b326e226204.html
[7] https://www.archcitydefenders.org/wp-content/uploads/2021/01/FSV-DATASETS_-People-Who-Died-In-Jail-Custody-Greater-St.-Louis-2009-2019.xlsx

Additionally, Plaintiff is entitled to compensation for the decedent's constitutional violations, and for his suffering great physical pain and mental anguish through the time period leading up to his death; funeral expenses; and a reasonable value of the companionship, comfort, instruction, guidance, support, and familial love of which the Plaintiff has been deprived by reason of the death of Mr. Bernard.

120.    As a direct and proximate result of the Defendants' negligence and deliberate indifference in treating Mr. Bernard's serious medical conditions, Mr. Bernard suffered loss of life.  This also deprived him of future enjoyment of life and income.

121.    All of the aforementioned actions demonstrate that Defendants' actions were reckless and/or callously indifferent to Mr. Bernard's rights so as to justify consideration by the trier of fact of aggravating circumstances in determining the amount of damages, including punitive damages, to be allowed.

122.    Defendants' conduct was evil, malicious, reckless and callous indifference to the federal rights of others. *Washington v. Denney*, 900 F.3d 549, 563-64 (8th Cir. 2018). Outrageous actions justify the imposition of punitive damages. *Davis v. Buchanan County Missouri*, 2020 U.S. Dist. Lexis 62909 at 5.  Plaintiff is entitled to recover punitive damages from the Defendants for their intentional, willful, and malicious acts and/or omissions which constituted gross negligence, recklessness, and deliberate indifference to Mr. Bernard's medical needs in violation of his civil rights pursuant to 42 U.S.C. § 1983.

123.    In this case, individual Defendants' also violated their ministerial duties by failing to physically observe and communicate with the inmates to assure they are alive and well as

required by Jail Policies and Procedures.[8] Additionally, nurses are required to provide inmates with medications lawfully prescribed or ordered. Mr. Bernard was prescribed insulin on August 17, 2023, by Defendant Jennifer Burns[9], and administration of that medication as prescribed is a ministerial duty.

124.    Plaintiff hereby demands trial by jury on all of the above issues, costs herein incurred, fees where appropriate, and such relief as is deemed appropriate for the Court.

## COUNT I
**Failure to Provide Adequate Medical Care in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, Cognizable Under 42 U.S.C. § 1983**
*Against Defendants Burns, Mirline, McGee, Jones, Ghani, Wilke, Schneider and Burris*

125.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

126.    Mr. Bernard had multiple serious medical conditions which were recognized by St. Louis jail and YesCare staff members.

127.    Defendants Burns, Mirline, McGee, Jones, Ghani, Wilke, Schneider and Burris were aware of Mr. Bernard's chronic health conditions and his illness throughout his detention at the jail.

128.    Mr. Bernard was experiencing objectively serious medical symptoms throughout his detention at the jail.

129.    Defendants were aware of the seriousness and escalating nature of Mr. Bernard's condition, and deliberately disregarded them, as demonstrated, *inter alia*, including but not limited

---

[8] Section IV, Subsection (D)(5)(c) of the City of St. Louis Department of Public Safety/Division of Corrections Policies and Procedures, pages 5-6 of aforementioned document.
[9] STL CITY Justice Center Medical Records, page 6 (Drug Prescription Orders)

to Mr. Bernard's rapid weight loss, his erratic behavior, his paranoia, his vomiting, his dehydration, and his disorientation.

130.    At no point during his detainment did Mr. Bernard receive appropriate care for his serious medical conditions while at the St. Louis City Justice Center.

131.    Defendants' denial of appropriate care demonstrates deliberate indifference towards Mr. Bernard's condition in violation of Mr. Bernard's Eighth Amendment and Fourteenth Amendment rights secured by the United States Constitution, cognizable under 42 U.S.C. § 1983.

132.    Defendants knew and/or should have known that Mr. Bernard was at substantial risk of serious injury to his health—including the possibility of death— due to his medical conditions, his incoherent speech, his hallucinations, and his disorientation, his nonresponsive behavior, but Defendants disregarded that risk by intentionally refusing and/or failing to take any reasonable measures to treat his conditions and/or address his medical needs.

133.    Defendants were aware and/or should have been aware that to deny Mr. Bernard appropriate medical care was to deny him of his Constitutional rights.

134.    In committing the acts alleged herein, Defendants acted willfully, recklessly, maliciously, and with deliberate indifference to Mr. Bernard and his serious medical needs and need for medical care.

135.    Defendants were acting under color of state law when they denied Mr. Bernard his Constitutional right to adequate medical care.

136.    As a direct and proximate result of the acts and omissions of Defendants, while acting alone and/or in concert with others and with deliberate indifference towards Mr. Bernard's rights and serious medical needs, Mr. Bernard suffered severe and devastating damages and

24

injuries, including but not limited to intense physical pain, the inability to get requested relief, suffering cardiac complications, mental anguish, and ultimately death.

137.    The conduct of Defendants, as alleged herein, was wanton, willful, undertaken with malicious and/or evil motives, and/or displayed a deliberate indifference to Mr. Bernard's constitutional rights, privileges, and immunities, thereby justifying award of punitive damages against each individual Defendant, in his or her individual capacity, in an amount sufficient to punish and deter Defendants and others from engaging in like misconduct in the future. Defendants' conduct was evil, malicious, reckless and callous indifference to the federal rights of others. *Washington v. Denney*, 900 F.3d 549, 563-64 (8th Cir. 2018). Outrageous actions justify the imposition of punitive damages. *Davis v. Buchanan County Missouri*, 2020 U.S. Dist. Lexis 62909 at 5.

138.    As a result of Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorney's fees and legal costs pursuant to 42 U.S.C. § 1988.

**COUNT II**
**Failure to Train, Supervise, and Discipline, ("Monell**
**Liability") in violation of the Fourteenth Amendment to the U.S. Constitution, Cognizable**
**Under 42 U.S.C. § 1983**
*Against Defendants St. Louis City, YesCare, Clemons-Abdullah, and John and Jane Does 1-5*

139.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

140.    Mr. Bernard's symptoms were of sufficient severity that Mr. Bernard should have received more appropriate medical care for his objectively serious condition.

141.    Defendants were aware of Mr. Bernard's objectively serious condition, which was obvious to even laypersons.

142.    Defendants' conduct was the moving force behind decedent's injury.

143.    Defendants' failure to adequately train staff constituted deliberate indifference

144.    Defendants failed to provide adequate medical care to Mr. Bernard.

145.    Defendant St. Louis City oversaw policies and procedures implemented by the jail.

146.    Defendant YesCare oversaw policies, procedures, and training of medical staff at the jail.

147.    Defendant Clemons-Abdullah implemented and supervised policies and procedures implemented by the jail.

148.    Defendant Clemons-Abdullah was Commissioner of Corrections during at least nine in-custody jail deaths.[10]

149.     Defendants St. Louis City, Clemons-Abdullah, and YesCare's inadequate policies, procedures, customs, practices and actions – as well as their inadequate training, supervision and discipline permitted failures, including but not limited to: failures to send patients presenting with severe symptoms to a hospital or infirmary, failures to conduct thorough physical wellness checks on seriously ill inmates, failing to take vital signs of symptomatic inmates, and failure to ensure that professional medical judgment or care would be ordered by outside treating physicians when necessary, delegating professional medical judgment and care to unqualified licensed practical nurses, and overall failures to ensure that patients receive the proper observation commensurate with their symptoms.

---

[10] "Clemons-Abdullah is the jail commissioner in the city of St. Louis. She is on quite the losing streak, after nine deaths, a couple of riots, detainees holding a guard hostage, and a couple of different lawsuits alleging massive use-of-force issues leading to abuse of people in the jail, as well as the destruction of records related to those abuses." https://www.stltoday.com/news/local/column/tony-messenger/messenger-after-nine-deaths-and-a-hostage-crisis-st-louis-jail-commissioner-can-t-hide/article_80656184-5274-11ee-a905-0f275b41b85b.html#tncms-source=login

150.     Defendant YesCare failed to train, supervise, and discipline licensed practical nursing Defendants Burris, McGee, Mirline, Jones, and Ghani related to the importance of properly administering life-or-death medications, including insulin.

151.     Defendant YesCare failed to train, supervise, and discipline the licensed practical nursing Defendants on protocols for ensuring that inmates received their prescribed medications.

152.     Defendant YesCare failed to supervise and discipline the licensed practical nursing defendants to ensure that they did not improperly mark patients as refusals when they did not show up to, were unable to leave their cell for, or were unable to competently refuse medication during routine medication passes during which medication is distributed and/or administered.

153.     Defendant St. Louis City failed to train, supervise, and discipline its correctional officer defendants to ensure that correctional officers within the jail responded appropriately to urgent medical situations.

154.     Defendant Clemons-Abdullah failed to train, supervise, and discipline its correctional officer defendants to ensure that correctional officers within the jail responded appropriately to urgent medical situations.

155.     The lack of and/or inadequate training, supervision, and discipline of Justice Center correctional and medical employees by Defendants YesCare, Clemons-Abdullah, and St. Louis City was the direct and proximate cause of the constitutional deprivations suffered by Mr. Bernard.

156.     The facts alleged herein demonstrate corrections personnel working individually and in concert to violate Mr. Bernard's civil rights.  These instances demonstrate an environment in which inmates who are sick are isolated and ignored rather than treated.

157.     This suggests an environment in which corrections personnel were willfully dismissive of the severity of Mr. Bernard's medical needs.

158.    Defendants St. Louis City's and YesCare's custom and/or practice to ignore obvious signs of a severe medical condition and not provide appropriate, adequate medical treatment, particularly by marking patients as refusing medications even when they are unable to make such decisions, deprived Mr. Bernard of his constitutional rights.

159.    Defendants St. Louis City's and YesCare's failure to supervise jail correctional and medical staff constituted a tacit authorization of the offensive acts.

160.    Despite having knowledge of Mr. Bernard's need for additional medical care, Defendants acted under color of state law to provide medical care that violated Mr. Bernard's rights under the Due Process clause of the Fourteenth Amendment to the Constitution pursuant to 42 U.S.C § 1983. Defendants showed deliberate indifference to Mr. Bernard's condition and treatment.

161.    As a direct and proximate cause of the Defendants' negligent violation of Mr. Bernard's civil rights, Mr. Bernard suffered damages to which he is entitled under 42 U.S.C. § 1983.

162.    The conduct of Defendants, as alleged herein, was wanton, willful, undertaken with malicious and/or evil motives, and/or displayed a deliberate indifference to Mr. Bernard's constitutional rights, privileges, and immunities, thereby justifying award of punitive damages against each individual Defendant, in his or her individual capacity, in an amount sufficient to punish and deter Defendants and others from engaging in like misconduct in the future. Defendants' conduct was evil, malicious, reckless and callous indifference to the federal rights of others. *Washington v. Denney*, 900 F.3d 549, 563-64 (8th Cir. 2018). Outrageous actions justify the imposition of punitive damages. *Davis v. Buchanan County Missouri*, 2020 U.S. Dist. Lexis 62909 at 5.

## COUNT III
### Unconstitutional Pattern, Practice, and/or Custom ("Monell liability") in violation of the Fourteenth Amendment to the U.S. Constitution Cognizable Under 42 U.S.C, § 1983
### *Against Defendants St. Louis City and YesCare*

163.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraphs as if each were set forth herein.

164.    The misconduct of the individually-named Defendants, as described herein, deprived the federal rights of Mr. Bernard *was authorized by and undertaken pursuant to a practice and custom that what so pervasive, widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants St. Louis and YesCare, all acting under the color of state law,* in that it is and was it was the regular pattern, practice and custom for employees to ignore serious medical conditions, to not provide prescribed life-saving or life-sustaining medication to their patients, to avoid sending patients to outside providers and emergency departments in order to save money, and as a result, staff of St. Louis and YesCare acted in ways alleged herein which resulted in this unconstitutional pattern and practice which was the moving force behind the violations of Mr. Bernard's constitutional rights.

165.     All the above refusals and failures amounted to unconstitutional customs and practices of the jail by Defendants St. Louis and YesCare.

166.    The misconduct of the individually-named Defendants, as described herein, was authorized by and undertaken pursuant to a practice and custom that was so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants, in that it is and was the regular pattern, practice and custom to prohibit and preclude correctional officers and medical staff from adequately treatments patients for the reasons stated above.

167.    The serious harms incurred by Mr. Bernard were the direct consequence of this pattern, practice, and/or custom of Defendants St. Louis and YesCare.

168.     As a direct and proximate consequence of the acts of Defendants, Mr. Bernard has suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering, severe anxiety, fear, and mental anguish, and loss of life.

169.     As the result of the actions of the individually named Defendants and Defendants St. Louis and YesCare, Mr. Bernard has suffered in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering, severe anxiety, fear, and mental anguish, and loss of life.

170.     As a result of Defendants unlawful actions and infringements of his protected rights, Plaintiff Winston, on behalf of her decedent son, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

171.     The conduct of Defendants, as alleged herein, was wanton, willful, undertaken with malicious and/or evil motives, and/or displayed a deliberate indifference to Mr. Bernard's constitutional rights, privileges, and immunities, thereby justifying award of punitive damages against each individual Defendant, in his or her individual capacity, in an amount sufficient to punish and deter Defendants and others from engaging in like misconduct in the future. Defendants' conduct was evil, malicious, reckless and callous indifference to the federal rights of others. *Washington v. Denney*, 900 F.3d 549, 563-64 (8th Cir. 2018). Outrageous actions justify the imposition of punitive damages. *Davis v. Buchanan County Missouri*, 2020 U.S. Dist. Lexis 62909 at 5.

**COUNT IV**
**<u>Wrongful Death</u>**
*Against all Defendants*

172.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraphs as if each were set forth herein.

173.    All Defendants owed a duty to ensure the safety of inmates and detainees in the St. Louis City Justice Center, including Mr. Bernard.  This duty included the duty to provide proper medical care to Mr. Bernard.

174.    Defendants' actions resulted in a violation of the duty owed to Mr. Bernard to ensure his basic welfare.

175.    Defendants also had ministerial duties to Mr. Bernard including but not limited to supervising inmates in housing units, complying with jail policies and procedures, and implementing doctors' orders (which included checking blood sugar levels and administering insulin as required).

176.    Defendants failed to properly carry out their ministerial duties.

177.    Defendants acted with malice by acting maliciously and/or wantonly doing that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. Defendants actions were wicked, done needlessly, or manifested a reckless indifference to the rights of others. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient punish defendants and to deter others from like conduct in the future

178.    Defendants knew their ministerial duties required them to act to protect Mr. Bernard. Nonetheless, Defendants willfully ignored their duty to follow St. Louis City Justice

Center policies, which constitute ministerial obligations, the execution of which involves carrying out procedures that do not involve the use of discretion.

179.    As a direct and proximate result of Defendants' actions and omissions, Mr. Bernard was deprived of potentially life-saving medical care, medicine and experienced injures that caused him to suffer loss of life.

180.    Plaintiff is entitled to recover damages against Defendants according to § 537.080 RSMo. for the wrongful injuries and death of Mr. Bernard, including special damages for his funeral and burial.

## COUNT V
## Medical Negligence
### *Against Defendants YesCare, Burns, Ghani, McGee, Burris, Jones, Mirline. John Doe 5*

181.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

182.    A patient-provider relationship existed between 1) YesCare, Burns, Jones, McGee, Ghani, Mirline, and 2) Mr. Bernard, and these Defendants owed Mr. Bernard a duty to provide medical care by using the degree of skill and learning ordinarily used under the same or similar circumstances by members of the medical profession.

183.    Defendants YesCare and the individually named YesCare employee defendants breached their duty in multiple ways and were negligent in the following respects including but not limited to:

a.  Failing to properly monitor Mr. Bernard and his care throughout his time at the jail

b.  Failing to address, treat and provide medication for Mr. Bernard's schizophrenia

c.  Failing to send Mr. Bernard to outside emergency and/or specialty care despite his serious symptoms and condition

d. Failing to administer insulin and other appropriate care to Mr. Bernard following his diagnosis of diabetes

184.    As a direct and proximate cause of Defendants' negligence, Mr. Bernard's treatment was severely delayed and denied which caused him to suffer severe pain and death.

185.    Indeed, the medical injury suffered by Mr. Bernard, as the result of Defendants' conduct, is medically diagnosable, was diagnosed and/or is medically significant.

186.    Defendants acted with malice by acting maliciously and/or wantonly doing that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. Defendants actions were wicked, done needlessly, or manifested a reckless indifference to the rights of others. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient punish defendants and to deter others from like conduct in the future.

187.    Defendants knew their ministerial duties required them to act pursuant to policy to protect Mr. Bernard. Nonetheless, Defendants willfully ignored their duty to follow St. Louis City Justice Center policies, which constitute ministerial obligations, the execution of which involves carrying out procedures that do not involve the use of discretion.

188.    Plaintiff is entitled to recover all applicable damages including, but not limited to, damages related to pain and suffering, mental anguish, loss of capacity to enjoy life, and attorney's fees, as related to Defendants' misconduct.

**Count VI**
**Negligence**
*Against all Defendants*

189.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

190.    Defendants St. Louis City had a duty to ensure that the staff in the St. Louis City Justice Center were able to identify and respond appropriately in emergency situations.

191.    Defendant St. Louis City's staff did not respond appropriately in Mr. Bernard's urgent medical situation.

192.    Defendant St. Louis City failed to ensure that policies were in place to ensure appropriate care is administered when inmates experience urgent medical needs.

193.    Defendant St. Louis City failed to ensure that staff was effectively trained and disciplined on policies to ensure that appropriate care is administered when inmates experience urgent medical needs.

194.    Defendants acted with malice by acting maliciously and/or wantonly doing that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. Defendants actions were wicked, done needlessly, or manifested a reckless indifference to the rights of others. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient punish defendants and to deter others from like conduct in the future.

195.    Defendants knew their ministerial duty required them to act pursuant to policy and protect Mr. Bernard. Nonetheless, Defendants willfully ignored their duty to follow St. Louis City Justice Center policies, which constitute ministerial obligations, the execution of which involves carrying out procedures that do not involve the use of discretion.

196.    As the result of these Defendants' policies and training falling short, staff failed to respond appropriately to Mr. Bernard's medical emergency.

197.    Mr. Bernard's injuries were directly and/or proximately caused by the inadequate policies surrounding medical care at the jail.

**WHEREFORE**, Plaintiff Winston, on behalf of decedent Mr. Bernard, respectfully prays that this Honorable Court enter judgement in her favor for compensatory and punitive damages, award her reasonable costs and attorneys' fees, and grant her any and all such other relief as this Court deems just and proper.

Dated:  October 17, 2024

Respectfully submitted,

Mark J. Pedroli, MBE 50787
*PEDROLI LAW, LLC*
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
P: 314.669.1817
Mark@PedroliLaw.com